## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

CHRISTOPHER BUDER
CEASAR HOLLOWAY
FERDINAND BONIFACIO
JOSHUA BUCKLAN
AGUSTIN ABAD
DOMINICK ABBRIANO
MICHAEL ABBRIANO
ISA ISHA ABDUL KARIM MIDDLETON
SALIH ABDUR-RAHMAN
RALPH ABEGG
ILLER ABRAMOV
COLIN ABRAMS
JUSTINE ABRUZZO
ANTONIO ACCARDO
ADAM ACEVEDO
ALEX ACEVEDO
GENESIS ACEVEDO
JARED ACEVEDO
PEDRO ACOSTA
ALIYA ADAMS
MATTHEW ADAMS
AUSTIN ADDIS
AHMED ADEKOYA
DENZEL ADONIS
JULIANNE AGOSTA
CHRISTOPHER AGOSTINO
JAIRO AGUIAR
KELVIN AGUILAR
PAUL AGULO

     Plaintiffs,

     v.

CITY OF NEW YORK and THE FIRE
DEPARTMENT OF THE CITY OF NEW
YORK,

     Defendants.

**Civil Action. No. _____**

**JURY TRIAL DEMANDED**

## **COMPLAINT**

Plaintiffs, by and through their counsel, the law firm of McGillivary Steele Elkin LLP, for their complaint against the City of New York ("New York City") and the Fire Department of the City of New York (FDNY), state as follows:

## INTRODUCTION

1.     Plaintiffs are current and former employees of the Defendants, the City of New York and the Fire Department of the City of New York (FDNY) (collectively herein, "City" or "Defendants"), who work or have worked in the positions of Emergency Medical Technician (EMT) and/or Paramedic below the rank of Lieutenant. Plaintiffs bring this action for a declaratory judgment, back pay and other relief pursuant to 29 U.S.C. § 207 and 29 U.S.C. § 216(b) to remedy the Defendants' willful and unlawful violations of federal law complained of herein.

2.     Plaintiffs bring this action against Defendants as a collective action in accordance with 29 U.S.C. § 216(b) of the Fair Labor Standards Act (FLSA) because of Defendant's unlawful deprivation of Plaintiffs' right to overtime compensation under the FLSA. The Plaintiffs are similarly situated to each other because they have been subject to the same City-wide and Agency-wide policies and/or practices that violate the FLSA whereby Defendants have suffered or permitted Plaintiffs to perform uncompensated overtime work before and/or after their paid shifts, have paid Plaintiffs and all those similarly situated various payments including but not limited to specialty differential pay on top of Plaintiffs' regular pay but have failed to include these additional payments in the calculation of the regular rate of pay at which Plaintiffs' overtime rate is based, and have failed to timely pay Plaintiffs overtime compensation.

## PARTIES

3.     Plaintiffs, all of whom are listed in Exhibit A, have each given their written

consent to be Party-Plaintiffs in this action pursuant to 29 U.S.C. § 216(b). The written consent forms attached as Exhibit A set forth each Plaintiff's name and address.

4.      Each of the Plaintiffs in this action while employed by Defendants has been an "employee" within the meaning of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 203(e)(1).

5.      Defendant City of New York is, among other things, a juridical entity amenable to suit under the FLSA in that it is, and was at all times material hereto, a public agency within the meaning of Section 3(x) of the FLSA, 29 U.S.C. § 203(x). The City of New York has a principal office and place of business located at Broadway and Park Row, New York, NY, 10007, and may be served with process by serving the Office of Corporation Counsel, 100 Church Street, New York, NY 10007.

6.      Defendant Fire Department of the City of New York (FDNY) is an administrative division of New York City and is, among other things, a juridical entity amenable to suit under the FLSA in that it is, and was at all times material herein, a public agency within the meaning of Section 3(x) of the FLSA, 29 U.S.C. §203(x). The FDNY has a principal office and place of business located at 9 MetroTech Center, Brooklyn, New York 11201.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391.

## FACTS

9.      Plaintiffs are, and have been at all times material, employed by Defendants in the FDNY's Bureau of Emergency Medical Services ("EMS") in the positions of EMT and/or Paramedic at various locations across the City.

10.     There are five divisions in the Bureau of EMS: Division 1 (Manhattan), Division 2 (Bronx), Division 3 (Brooklyn), Division 4 (Queens) and Division 5 (Staten Island and part of South Brooklyn). Within those five divisions there are at least 39 ambulance stations where EMS resources are housed and deployed. Plaintiffs assigned to these divisions are known as "field" employees.

11.     While working as an EMT and/or Paramedic assigned to a field position, Plaintiffs' principal job duties include, but are not limited to, providing direct medical and patient care by, among other things, responding to calls for medical assistance and transporting individuals to the appropriate medical receiving facility. EMTs provide what is known as basic life support (BLS); BLS care includes but is not limited to cardio-pulmonary resuscitation, airway and breathing management, hemorrhage control, spinal and fracture immobilization, general medical assessment, the use of an external defibrillator, and the transportation of the individual to a care facility, which is typically a hospital. Paramedics provide not only BLS care but also what is known as advanced life support care (ALS); ALS care includes but is not limited to reading and evaluating an electrocardiogram, performing advanced airway techniques, and administering prescription medication, up to and including controlled substances.

12.     There are also EMTs and Paramedics who are assigned to non-field positions, including positions in the Bureau of Training, Medical Dispatch, and the Resource Coordination Center (RCC). Plaintiffs assigned to the Bureau of Training have the principal job duties of, among other things, teaching classes on EMS-related subjects to FDNY employees. Plaintiffs assigned to the RCC and Medical Dispatch have the principal job duties of, among other things, responding to emergency calls and dispatching ambulances and other units to emergencies.

13.     For example, at all times material, Plaintiff Christopher Buder has worked for

Defendants as a field EMT; Plaintiff Buder is currently assigned to Station 45 in Woodside Greens, Queens. At all times material, Plaintiff Ceasar Holloway has worked for Defendants as a field EMT and is currently assigned to Station 10 in Manhattan. At all times material, Plaintiff Ferdinand Bonifacio has worked for Defendants as a field Paramedic and is currently assigned to Harlem Station 16. At all times material, Plaintiff Joshua Bucklan has been a non-field Paramedic assigned to the Bureau of Training.

14.     While working as EMTs and Paramedics, regardless of whether assigned to a field or non-field position, Plaintiffs and all others similarly situated routinely work over 40 hours a week. However, the City fails to compensate Plaintiffs for all hours worked over 40 in a workweek at a rate of one and one-half times their regular rate of pay.

15.     The regular schedule for field EMTs and Paramedics consists of either eight or 12-hour shifts. Plaintiffs on 12-hour shifts are assigned to work three shifts one week followed by four shifts the next week in a repeating pattern (i.e., seven scheduled workdays in a two week pay period). Plaintiffs on eight-hour shifts are assigned to work five shifts followed by three days off, then another five shifts followed by two days off in a repeating pattern. The regular schedule for non-field EMTs and Paramedics consists of five eight and one-half hours shifts each week, with 30 minutes of pay automatically deducted each week for an unpaid meal period. As such, all EMTs and Paramedics are regularly scheduled to work, and do work, at least 40 hours per week.

16.     However, Defendants have suffered or permitted Plaintiffs and all others similarly situated to work additional time before and/or after their scheduled shifts without compensation; Defendants have also suffered or permitted non-field EMT and Paramedic Plaintiffs and all others similarly situated to work additional time during their automatically deducted unpaid 30-minute meal periods without compensation. Defendants only compensate Plaintiffs and all others

similarly situated for time in excess of the scheduled, paid shift that it deems to be "approved" or is otherwise authorized to be submitted for overtime compensation. As such, Defendants regularly fail to compensate Plaintiffs and all others similarly situated at a rate of one and one-half times their regular rate of pay for additional work that they perform in excess of 40 hours each week.

17.     Additionally, under Agency-wide policy and collective bargaining agreements, Plaintiffs receive certain premium payments on top of their base pay. These payments include specialty differential pay (such as HazTac pay, Rescue Medic pay, etc.), longevity pay, meal money, and differential payments related to night work.

18.     When Defendants *do* compensate Plaintiffs and all others similarly situated for approved overtime (which does not include pay for the pre-shift, post-shift, and/or meal period work described above), Defendants systemically fail to pay them for this overtime work at the correct rate because it fails to include the additional premium payments described above in Paragraph 17 in the regular rate of pay on which Plaintiffs' overtime rate is based.

19.     In addition, when Defendants do compensate Plaintiffs and all others similarly situated for approved overtime, it is often paid more than two pay periods (i.e., more than 35 days) after the overtime has been worked through no fault of the Plaintiffs. The delay in payment is because of managerial delays in acquiring the required approvals to pay Plaintiffs for their overtime or for other reasons that are unrelated to the City's ability to determine the amount of overtime compensation that is owed to the Plaintiffs. For example when an employee goes out on long term leave and accordingly has their additional premium payments "turned off" when they are not working and earning them, Defendants fail to turn them back on upon the employee's return to work unless a payroll inquiry is submitted; it is only months later that the employee will

receive a check for the unpaid premiums that were earned since they returned to work until at least the date of the payroll inquiry. Moreover, these delayed payments do not include backpay for underpaid overtime that should have included the premium payments as part of the calculation of the employee's overtime rate.

### *Defendant's Fair Labor Standards Act Violations are Willful*

20.     Defendants capture the work hours of Plaintiffs, including time spent working outside of their scheduled shifts, on the City's timekeeping system, "CityTime," which is maintained and accessible at Plaintiffs' work locations. The purpose of CityTime is to track employees' work hours.

21.     Time that is recorded but worked outside Plaintiffs' scheduled shifts is categorized as "uncompensated time" in the CityTime system, and Plaintiffs are not paid for that time even though, as explained herein, Defendants have suffered or permitted them to perform uncompensated overtime work during that recorded time. In addition, for non-field Plaintiffs, CityTime automatically deducts 30 minutes each day for an uncompensated meal period, regardless of whether Plaintiffs work through all or part of their uncompensated meal period. Defendants also categorize this unpaid half hour as "uncompensated" in CityTime.

22.     CityTime is not only used to track employees' work hours, but also to administer and calculate the pay of Plaintiffs and all others similarly situated. When the City programmed and implemented CityTime, it adopted a policy of utilizing a "pay-to-schedule" system (i.e., one that, by default, pays employees for their scheduled work hours) rather than a "pay-to-punch" system (i.e., one that, by default, pays employees for all the time between punch in and punch out). As such, by default, Plaintiffs are only compensated for their regular schedule unless they also work "approved" overtime. Thus, although all minutes of Plaintiffs' pre- and/or post-shift

work time are captured by Defendants in the CityTime system and such records are reviewed by FDNY supervisors, managers, and timekeepers, Plaintiffs and all others similarly situated are paid only for their scheduled hours each shift.

23.    Defendant is aware that its "pay-to-schedule" system unlawfully fails to capture Plaintiffs' actual working hours and fails to pay employees for all compensable work time. Indeed, in a previous case brought on behalf of over 2,500 EMTs and Paramedics working for Defendants, *Perry v. City of New York,* the Second Circuit affirmed an October 2019 jury verdict in favor of the plaintiffs in the amount of $17.78 million for willful FLSA violations, including failing to pay for pre-shift and post-shift time recorded on CityTime. 78 F.4th 502 (2d Cir. 2023). Notably, in that same case, the Second Circuit also affirmed that "knowledge of non-payment is irrelevant to FLSA liability." *Id.* at 515.

24.    Similarly, in the consolidated cases of *Foster* and *De La Cruz v. City of New York*, the trial court granted summary judgment for plaintiffs working at two other City agencies—the Administration for Children's Services and the Human Resources Administration, which both use the same CityTime software—on their FLSA claims that the City had failed to compensate them for time worked before and after their scheduled shifts and during their unpaid meal periods, where that time was recorded as "uncompensated" in CityTime. 1:14-cv-04142, 1:14-cv-09220, 2017 WL 11591568, at *4, *23-25 (S.D.N.Y. Sept. 30, 2017).

25.    Defendants have repeatedly been held liable for failing to pay for recorded pre- and post-shift work; the City is well aware of its obligation to pay employees for overtime work which is suffered or permitted, even if employees do not make a request for overtime compensation for that work or if that time is not of a type approved by Plaintiffs' superiors. *See, e.g.*, *Lawtone-Bowles v. City of New York*, 1:16-cv-04240, 2020 WL 2833366, at *4 (S.D.N.Y.

June 1, 2020) ("Defendant[] . . . argu[es] . . . that Plaintiffs failed to report the unpaid overtime . . . . The City has made this argument repeatedly in FLSA overtime litigation in this District and it has been unanimously rejected."); *Foster/De La Cruz*, 2017 WL 11591568, at *4, *23-25 (summary judgment granted to plaintiffs on their FLSA claims that they worked uncompensated overtime of which their managers were aware, despite failure to seek pre-approval or otherwise request compensation); *Perez v. City of New York*, 1:12-cv-04914, 2017 WL 4326105, at *12-13 (S.D.N.Y. Sept. 27, 2017) (denying summary judgment to City on defense to FLSA liability based on claim that plaintiffs failed to "report" overtime on the CityTime system where "ample record evidence" demonstrated that the City knew or had reason to know plaintiffs were working unreported overtime hours); *Worley v. City of New York*, 1:17-cv-04337, 2020 WL 730326 (S.D.N.Y. Feb. 12, 2020) (granting summary judgment to School Safety Agent plaintiffs for uncompensated pre-shift, post-shift, and meal period work about which the City was aware).

26.    In fact, the former New York City Corporation Counsel admitted, under oath in the previous case brought on behalf of New York City EMTs and Paramedics, that it is an employer's responsibility to ensure that employees get paid for work about which the employer is aware. *See Perry v. City of New York*, No. 1:13-cv-1015 (S.D.N.Y.), Dkt. 181 (Trial Transcript of October 16, 2019) at 969-70 ("[I]t would be . . . the supervisor's responsibility to ensure that the employees get paid for work about which the employer is aware; correct?" "Correct."). *See also Foster/De La Cruz*, 2017 WL 11591568, at *9 ("[T]he City's chief employment lawyer . . . concedes that where a manager observes an employee working [outside their shift], the manager has an obligation to make sure that employee is compensated for that time, even if the employee did not obtain pre-approval[.]") (citations omitted).

27.    Despite numerous decisions, including a jury verdict in a case involving FDNY

EMTs and Paramedics, finding the City liable for failing to pay for overtime work that is recorded, Defendants have failed to take sufficient steps with respect to the CityTime system or its own policies and procedures to properly capture and compensate its workers for compensable work recorded in CityTime performed by the Plaintiffs and those similarly situated with their supervisors' knowledge.

28.    Defendants have failed to conduct an audit or otherwise investigate any work minutes captured and treated as "uncompensated" in CityTime, including but not limited to unpaid meal minutes, to determine what EMTs and Paramedics are doing during the recorded time outside of their scheduled shift hours that appear on its timekeeping system.

29.    The City has also previously been held liable for failure to properly calculate employees' regular rates of pay by failing to include differential payments, such as night shift differentials and longevity pay, in the rate at which overtime is paid to employees. *See, e.g.*, *Foster/De La Cruz*, 2017 WL 11591568, at *32-35; *Lawtone-Bowles v. City of N.Y.*, 2020 WL 2833366, at *5; *Lynch v. City of New York*, 291 F. Supp. 3d 537, 551-52 (S.D.N.Y. 2018). Despite these decisions, the City continues to fail to include such differential payments in Plaintiffs' regular rates of pay.

30.    Defendants have failed to seek advice from the U.S. Department of Labor regarding whether their pay policies and practices comply with the FLSA.

31.    Defendants have not disciplined any EMT or Paramedic for performing unpaid overtime before and/or after their scheduled shift hours. To the contrary, Defendants encourage Plaintiffs to perform work outside of their scheduled shifts by, among other things, commending them in performance evaluations for reporting to work pre-shift to begin working.

32.    Many of the Plaintiffs in the instant action were plaintiffs in *Conzo et al. v. City of*

*New York, et al.*, Case No. 05-civ-705, *Aarons et al. v. City of New York, et al.*, Case No. 09-civ-10138, and/or *Perry v. City of New York, et al.,* Case No. No. 1:13-cv-1015.  In those cases, the plaintiffs also raised the issue of Defendants' failure to properly pay overtime for hours worked over 40 in a workweek. The parties in *Conzo* and *Aarons* settled all of the claims in those lawsuits through February 9, 2011, and in *Perry,* as noted above, the Second Circuit recently affirmed the jury verdict in favor of plaintiffs. Further, in the action *Kroustallis v. City of New York, et al.,* Case No. 1:16-cv-08421, hundreds of Lieutenants in the Bureau of EMS, including but not limited to Plaintiffs' immediate supervisors, brought nearly identical FLSA claims for Defendants' failure to properly pay overtime compensation for hours worked over 40 in a workweek; this case was resolved through a settlement in November 2023.  Despite these four earlier lawsuits, Defendants have nevertheless failed to make meaningful or sufficient changes to correct their ongoing FLSA violations with respect to EMTs and Paramedics.

33.    Plaintiffs' timekeeping and payroll data is in Defendants' exclusive possession and is not readily available to Plaintiffs. Plaintiffs' CityTime records and payroll data are "maintained across various [agency] branches, not available for download or electronic transfer, not text-searchable, not maintained for more than two years, and require[] a separate search for each pay period." *Murray v. City of New York*, No. 1:16-cv-08072, Dkt. 66 (S.D.N.Y. Oct. 18, 2017) at 3.

## *Uncompensated Work in Excess of Plaintiffs' Regular Schedule*

34.    While working as EMTs and/or Paramedics, Plaintiffs and all others similarly situated regularly work over 40 hours a week. As set forth above, at least every other workweek field EMTs and Paramedics are scheduled for four shifts of 12 hours each (totaling 48 hours). EMTs and Paramedics assigned to eight hours shifts are scheduled for five shifts per week (totaling 40 hours) for most of their work weeks. Similarly, non-field EMTs and Paramedics are

scheduled for five shifts of eight and one-half hours each, including an unpaid 30-minute meal period, each week (totaling 40 hours). Defendants have nevertheless suffered or permitted Plaintiffs to perform additional work, as described below, in excess of their scheduled shift hours on a daily basis, all of which is considered overtime work under the FLSA; however, the Plaintiffs are not paid for this work.

35. Field EMTs and Paramedics perform a minimum of 20-30 minutes of pre-shift and post-shift work daily without compensation. For example, prior to their scheduled shifts, field EMTs and Paramedics engage in 15-20 minutes of necessary, integral, and indispensable work tasks, including: checking in with their supervisors and discussing with them any information pertinent to their daily assignments; gathering, inspecting and organizing the personally-issued medical equipment they are required to carry to each assignment, including their technician's bags (for EMTs); stocking technician bags in accordance with FDNY policies, gathering and inspecting their personal protective equipment (PPE) that they are required to have with them at all times while on duty; beginning the Part 800 check of their assigned ambulance, required by the State of New York; restocking the ambulance or other vehicle; and sanitizing the ambulance or other vehicle. Post-shift, field EMTs and Paramedics exchange information and equipment with the oncoming shift, including radiation detection meters, radios and tablets used to record patient data, and Paramedics exchange and log controlled substances with the oncoming shift in the presence of a Lieutenant. EMTs and Paramedics also stow their PPE and other equipment and restock the ambulance as necessary after their scheduled shift.

36. Non-field EMTs and Paramedics engage in necessary, integral, and indispensable tasks prior to and after their scheduled shifts and during their unpaid meal periods including: preparing lecture materials, sign-in sheets, hand-outs and equipment for training classes;

obtaining equipment from their lockers; conducting information briefings with an outgoing employee in order to obtain necessary information concerning events that are currently taking place, such as stabbings, shootings, or major traumas; and exchanging information about the units that are currently dispatched to a call such that it would affect the distribution of ambulances across the City.

37.    Field EMTs and Paramedics are expected to log on as available to take an emergency call and to leave their station to head to their assigned Cross Street Location from which they will respond to emergency calls within minutes of the beginning of their scheduled shift. Plaintiffs can be disciplined or reprimanded if they are not quickly able to log on as available; indeed, the City tracks the log on times of each EMT and Paramedic. The only way Plaintiffs can meet the City's expectations with respect to going available as soon as possible after their scheduled shift start time is if they arrive to work at least 15 minutes early and begin performing their job duties.

38.    Field EMT and Paramedic Plaintiffs also perform between 10-15 minutes of work after the end of their scheduled shifts, often without compensation, because they must keep their medical equipment, controlled substances, and gear through the last minute of their scheduled shift in case they receive an emergency call. As such, on days where the ambulance or vehicle remains in service until the end of the shift, any hand-to-hand exchange of equipment and/or controlled substances with the oncoming tour must necessarily happen *after* the end of Plaintiffs' scheduled shift. The City has provided an overtime code for Paramedics to use for narcotics' *securement,* which is when there is no oncoming shift to provide the controlled substances to, and instead those controlled substances are secured in a locker. The overtime code does not apply to the *transfer* that occurs when one shift transfers narcotics and other equipment to

another shift. In addition, in or around late 2022, some three years after the jury verdict in the *Perry* case, Plaintiffs assigned to work as EMTs were provided with overtime pay codes for EMTs to use for certain post-shift work. The City's records will contain information about those instances when Plaintiffs and those similarly situated were allowed to use such codes and, as such, were compensated for post-shift work at issue in this case. The City does not permit Plaintiffs to use either of these codes, or any other, to request payment for the pre-shift work.

39.    For example, Plaintiff Christopher Buder regularly works 12-hour shifts as a field EMT, and every other week he is scheduled for four 12-hour shifts (totaling 48 hours of scheduled work). Each shift, including those during weeks in which he is scheduled to work more than 40 hours, Plaintiff Buder arrives approximately 15-20 minutes early and begins performing the tasks enumerated in Paragraph 35. Additionally, during each shift including those during weeks in which he is scheduled to work more than 40 hours, Plaintiff Buder performs approximately 10-15 minutes of work beyond the end of his scheduled shift including the tasks enumerated in Paragraph 35. Because Plaintiff Buder clocks into CityTime immediately before beginning to perform work activities and the last thing he does at the end of his workday is clock out of CityTime, all this pre-shift and post-shift work time is on-the-clock and recorded by Defendants. Notably, although Defendants were aware of this additional overtime work performed by Plaintiff Buder, Defendants failed to fully compensate him for it.

40.    For example, Plaintiff Ceasar Holloway regularly works 12-hour shifts as a field EMT, and every other week he is scheduled for four 12-hour shifts (totaling 48 hours of scheduled work). Each shift, including those during weeks in which he is scheduled to work more than 40 hours, Plaintiff Holloway arrives approximately 20-30 minutes early and begins performing the tasks enumerated in Paragraph 35. Additionally, during each shift including those

during weeks in which he is scheduled to work more than 40 hours, Plaintiff Holloway performs approximately 5-10 minutes of work beyond the end of his scheduled shift including the tasks enumerated in Paragraph 35. Because Plaintiff Holloway clocks into CityTime immediately before beginning to perform work activities and the last thing he does at the end of his workday is clock out of CityTime, all of this pre-shift and post-shift work time is on-the-clock and recorded by Defendants. Notably, although Defendants were aware of Plaintiff Holloway's additional overtime work, Defendants failed to fully compensate him for it.

41.    For example, Plaintiff Ferdinand Bonifacio regularly works 12-hour shifts as a field Paramedic, and every other week he is scheduled for four 12-hour shifts (totaling 48 hours of scheduled work). Each shift, including those during weeks in which he is scheduled to work more than 40 hours, Plaintiff Bonifacio arrives approximately 15-20 minutes early and begins performing the tasks enumerated in Paragraph 35 Additionally, during each shift including those during weeks in which he is scheduled to work more than 40 hours, Plaintiff Bonifacio performs approximately 10-15 minutes of work beyond the end of his scheduled shift including the tasks enumerated in Paragraph 35. Because Plaintiff Bonifacio clocks into CityTime immediately before beginning to perform work activities and the last thing he does at the end of his work day is clock out of CityTime, all of this pre-shift and post-shift work time is on-the-clock and recorded by Defendants. Notably, although Defendants were aware of Plaintiff Bonifacio's additional overtime work, Defendants failed to fully compensate him for it.

42.    In addition to their 40 hours of weekly paid work, each shift non-field EMTs and Paramedics also perform *a minimum* of 10-30 minutes of unpaid pre-shift and/or post-shift work and regularly work during unpaid meal periods.

43.    For example, Plaintiff Joshua Bucklan is scheduled to work five shifts of eight

and one-half hours, including a 30-minute unpaid meal period each shift each week (totaling 40 scheduled hours). Each shift, Plaintiff Bucklan performs the tasks enumerated in Paragraph 36 before and/or after his scheduled shift for approximately 10-30 minutes, on average. Additionally, Plaintiff Bucklan performs work during his unpaid meal periods approximately 2-3 times per week. Because the first thing Plaintiff Bucklan does before beginning to perform work is clock into CityTime and the last thing he does at the end of his workday is clock out of CityTime, all of this pre-shift and post-shift work is on-the-clock and recorded by Defendants. Notably, although Defendants were aware of Plaintiff Bucklan's additional overtime work, Defendants failed to compensate him for it.

44.    The amount of uncompensated work hours for which Plaintiffs and those similarly situated have not been paid can be identified through the Defendant's timekeeping system, CityTime, and through other work and pay records.

### *Rate at Which Overtime is Paid*

45.    In addition to the unpaid work described above, EMTs and Paramedics routinely work additional shifts and other approved overtime for which they are paid.

46.    While working as EMTs and Paramedics during the last three years, Plaintiffs and all others similarly situated have received certain payments in addition to their basic pay. These payments include, but are not limited to, specialty differential pay such as HazTac pay, Rescue Medic pay, longevity pay," "meal money," and differential payments related to night work. These payments are made pursuant to Agency-wide policy and/or collective bargaining agreements, and thus they are paid to Plaintiffs and all others similarly situated. However, on occasions when Plaintiffs and those similarly situated are paid overtime compensation, Defendants fail to include these additional payments in the regular rate of pay used to calculate

the overtime rate payable to Plaintiffs and those similarly situated.

47.    The failure to include these differential payments in Plaintiffs' regular rates of pay means that when Plaintiffs receive paid overtime for working in excess of 40 hours in a week, they are paid at a rate for those overtime hours that is below the rate mandated by the FLSA.

48.    For example, during the past three years, Plaintiffs have earned additional premium payments while working as EMTs and/or Paramedics during weeks in which they also were paid overtime compensation. However, on these occasions and others, Defendants did not include these premium payments in the calculation of their overtime rates during those workweeks.

49.    EMTs and Paramedics employed by Defendants who receive premium payments pursuant to Agency-wide policy and/or collective bargaining agreements, including Plaintiffs, are similarly situated and routinely work more than 40 hours in a workweek but are denied proper compensation for hours worked in excess of 40 hours because Defendants continue to fail to include these payments in the regular rate of pay upon which the Plaintiffs' overtime rate is based. The precise amount of improperly paid overtime received by each EMT and Paramedic can be identified through the Defendants' timekeeping system and payroll records, which are in Defendants' exclusive possession and control.

### *Late Payment of Overtime Worked*

50.    The FLSA mandates that overtime compensation be paid for overtime work on the regular payday for the period in which such workweek ends. However, when the City does compensate Plaintiffs for hours worked over 40 in a workweek, the City regularly delays the payment of overtime more than two pay periods (i.e., more than 35 days) after the overtime was worked.

51.     Plaintiffs have been paid for approved overtime more than 35 days after the overtime was worked on multiple occasions during the last three years, despite Plaintiffs' complaints to the Defendant. The delay in payment is because of managerial delays in acquiring the required approvals to pay Plaintiffs for their overtime or for other reasons that are unrelated to the City's ability to determine the amount of overtime compensation that is owed to the Plaintiffs, for example the Defendants' failure to automatically "turn on" premium payments after an employee returns to work from long term leave. Thus, Defendants have violated the basic principles of the FLSA by delaying Plaintiffs' overtime payments for working in excess of 40 hours a workweek, with such delay not being reasonably necessary to compute Plaintiffs' overtime pay.

52.     The precise amount of unlawfully delayed overtime compensation received by each EMT and Paramedic can be identified through the Defendants' timekeeping system and payroll records, which are in Defendants' exclusive possession and control.

## COUNT I

### FAILURE TO PAY OVERTIME FOR ALL HOURS PLAINTIFFS ARE SUFFERED OR PERMITTED TO WORK IN VIOLATION OF SECTION 7(a) OF THE FLSA, 29 U.S.C. § 207(a)

53.     Plaintiffs hereby incorporate by reference all preceding Paragraphs and restate them herein.

54.     At all times material herein, during those workweeks in which Plaintiffs and all others similarly situated have worked hours in excess of 40 hours a week, they have performed pre-shift and/or post-shift work activities, including but not limited to performing tasks enumerated in Paragraphs 35 and 36 without compensation, and for non-field Plaintiffs during their unpaid meal periods, all of which is recorded in Defendants' CityTime system, timekeeping

18

records and other work logs. This additional, daily work has caused Plaintiffs and all others similarly situated to work in excess of 40 hours in a week without proper overtime compensation in violation of the FLSA. Accordingly, as a result of these Agency-wide pay policies and practices, Defendants have failed to provide Plaintiffs and all others similarly situated with the rights and protections provided under section 7(a) of the FLSA, 29 U.S.C. § 207(a).

55.    Section 207 of the FLSA requires the payment of overtime compensation to employees who work in excess of the hourly standards set forth therein. In particular, Section 207(a) requires the payment of overtime compensation at the rate of one and one-half times each employee's regular rate of pay for all hours that employees are suffered or permitted to work in excess of 40 hours per week. Defendants have failed to comply with the overtime pay requirements of the FLSA by failing to compensate Plaintiffs and all others similarly situated for work that they have been suffered or permitted to work before the official start time and/or after the end time of their regularly scheduled shifts, and for non-field EMTs and Paramedics, during their unpaid 30-minute meal periods.

56.    As a result of Defendants' systemic, continuing, willful and purposeful violations of the FLSA, there has become due and owing to the Plaintiffs an amount that has not yet been precisely determined. The employment and work records for the Plaintiffs are in the exclusive possession, custody and control of the Defendants and the City's public agencies and the Plaintiffs are unable to state at this time the exact amount owing to them; but, from these records, Plaintiffs will be able to ascertain the precise extent of these violations of the FLSA. Defendants are under a duty imposed by the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory provisions, to maintain and preserve payroll and other employment records with respect to the Plaintiffs from which the amount of Defendants' liability can be ascertained.

57.    Pursuant to 29 U.S.C. § 216(b), Plaintiffs and all others similarly situated are entitled to recover liquidated damages in an amount equal to their back pay damages for the Defendants' failure to pay overtime compensation for pre-shift, post-shift, and/or meal period work as alleged herein.

58.    Plaintiffs and all others similarly situated are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

### COUNT II

**FAILURE TO PROPERLY CALCULATE THE REGULAR RATE OF PAY IN VIOLATION OF SECTION 7(a) OF THE FLSA, 29 U.S.C. § 207(a)**

59.    Plaintiffs hereby incorporate by reference all preceding Paragraphs and restate them herein.

60.    Section 207(e) of the FLSA, 29 U.S.C. § 207(e), as well as the regulations of the U.S. Department of Labor, 29 CFR Part 778, *et seq*., require that all forms of remuneration be included in the rate at which FLSA overtime is paid, with some limited exceptions not applicable here. Defendants have failed to include certain premium payments, including but not limited to specialty differential pay and longevity pay, and other forms of premium pay in Plaintiffs' regular rates of pay for purposes of computing overtime pay entitlements of Plaintiffs and all others similarly situated, resulting in Defendants paying Plaintiffs and all others similarly situated for overtime work at a rate that is below the rate mandated by the FLSA. Defendants' failure to include these forms of additional compensation in Plaintiffs' regular rate of pay violates section 7(a) of the FLSA, 29 U.S.C. § 207(a), and 29 C.F.R. § 778.207(b).

61.    As a result of the Defendants' systemic, continuing, willful, and purposeful violations of the FLSA, there have become due and owing to the Plaintiffs and all others similarly situated an amount that has not yet been precisely determined. The employment and

work records for the Plaintiffs and all others similarly situated reflecting such ongoing violations are in the exclusive possession, custody and control of Defendants and the City's public agencies, and Plaintiffs are unable to state at this time the exact amount owing to them; but, from these records, Plaintiffs will be able to ascertain the precise extent of these violations of the FLSA. Defendants are under a duty imposed under the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory provisions to maintain and preserve payroll and other employment records with respect to Plaintiffs and all others similarly situated from which the amount of Defendants' liability can be ascertained.

62.    Pursuant to 29 U.S.C. § 216(b), Plaintiffs and all others similarly situated are entitled to recover liquidated damages in an amount equal to their back pay damages for the Defendants' failure to properly pay overtime compensation as alleged herein.

63.    Plaintiffs and all others similarly situated are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

## COUNT III

**FAILURE TO PAY FLSA OVERTIME IN A TIMELY MANNER BY PAYING FOR OVERTIME WEEKS AFTER THE OVERTIME WAS WORKED**

64.    Plaintiffs hereby incorporate by reference all preceding Paragraphs and restate them herein.

65.    The FLSA mandates that overtime compensation be paid on the regular payday for the period in which the overtime work is performed. Overtime payments under the FLSA may not be delayed except as reasonably necessary to compute the amount owned, and in no event shall such payments be delayed beyond the next payday after such computation can be made. 29 C.F.R. § 778.106. Defendants have violated these basic principles by delaying for weeks or even months Plaintiffs' overtime payments for working in excess of 40 hours a week,

with such delay not being reasonably necessary to compute Plaintiffs' overtime pay, but rather because of a failure by management personnel to approve overtime payments or "turn on" premiums payments after an employee returns from long term leave, management withholding such payments until the next budgetary quarter, or some other reason unrelated to Defendant's ability to calculate the amount owed to Plaintiffs.

66.     As this court recently recognized in *Accosta, et al. v. Lorelei Events Grp. Inc., et al.*, "[w]hile 'the Second Circuit has no bright line rule for determining what qualifies as an 'unreasonable' amount of time for an employer to delay paying its employees,' several courts have held that 'two weeks is an unreasonably amount of time for an employer to delay a paycheck [under the FLSA].'" No. 7:17-cv-07804 (NSR), 2022 WL 195514, at *4 (S.D.N.Y. Jan. 21, 2022) (quoting *Coley v. Vannguard Urban Improvement Ass'n, Inc.,* No. 12-CV-5565 (PKC) (RER), 2018 WL 1513628, at *13 (E.D.N.Y. Mar. 29, 2018)).  Here, Defendants' failure to pay Plaintiffs FLSA overtime pay in a timely manner and the withholding of Plaintiffs' overtime payments violates section 7(a) of the FLSA. 29 U.S.C. § 207(a); 29 C.F.R. § 778.106.

67.     As a result of the Defendants' systemic, continuing, willful, and purposeful violations of the FLSA, there has become due and owing to the Plaintiffs an amount that has not yet been precisely determined. The employment and payroll records for the Plaintiffs are in the exclusive possession, custody and control of Defendant, and Plaintiffs are unable to state at this time the exact amount owing to them; but, from these records, Plaintiffs will be able to ascertain the precise extent of these violations of the FLSA. Defendants are under a duty imposed under the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory provisions to maintain and preserve payroll and other employment records with respect to Plaintiffs and other employees similarly situated from which the amount of Defendants' liability can be ascertained.

68.     Pursuant to 29 U.S.C. § 216(b), Plaintiffs and all others similarly situated are entitled to recover liquidated damages in an amount equal to their backpay damages for the Defendant's failure to timely pay overtime compensation as alleged herein.

69.     Plaintiffs and all others similarly situated are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

## DEMAND FOR A JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand that their claims be tried before a jury.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs pray that this Court:

(a) Order a complete and accurate accounting of all the compensation to which the Plaintiffs and those similarly situated are entitled;

(b) Award Plaintiffs and all others similarly situated monetary liquidated damages equal to their unpaid compensation;

(c) Award Plaintiffs and all others similarly situated interest on their unpaid compensation;

(d) Award Plaintiffs and all others similarly situated their reasonable attorneys' fees to be paid by the Defendant, and the costs and disbursements of this action; and

(e) Grant such other relief as may be just and proper.

Respectfully submitted,

*s/ Sara L. Faulman*
Molly A. Elkin (*pro hac vice to be submitted*)
Sara L. Faulman
Sarah M. Block

Sophia Serrao (*pro hac vice to be submitted*)
McGILLIVARY STEELE ELKIN LLP
1101 Vermont Ave., N.W.
Suite 1000
Washington, DC 20005
Phone: (202) 833-8855
mae@mselaborlaw.com
slf@mselaborlaw.com
smb@mselaborlaw.com

*Counsel for Plaintiffs*